IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROY L. MORRISON, | |
| Plaintiff, | No. C 05-04351 JSW |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| ALBERTO GONZALES, | |
| Defendant. | |

## INTRODUCTION

This matter comes before the Court upon consideration of the motion for summary judgment filed by Defendant Alberto Gonzales ("Defendant"). Having considered the parties' pleadings, relevant legal authority, and having had the benefit of oral argument, the Court HEREBY GRANTS IN PART AND DENIES IN PART Defendant's motion.

## FACTUAL BACKGROUND

Plaintiff Roy L. Morrison ("Morrison") is an African-American male who has been employed by the Federal Bureau of Prisons ("BOP") since 1983.[1] (Deposition of Roy L. Morrison ("Morrison Depo.") at 11:4-6.)[2] During his tenure with the BOP, Morrison has served, *inter alia*, as Warden at Federal Correctional Institution Elkton, Ohio ("FCI Elkton") and as a Senior Deputy Regional Director at the BOP's Western Regional Office (the "Senior

---

[1] The facts are undisputed, unless otherwise noted.

[2] Excerpts of Morrison's deposition are attached as Exhibit 1 to the Declaration of Abraham Simmons in Support of Defendant's Motion for Summary Judgment ("Simmons Decl.").

Deputy position"). (Declaration of Roy L. Morrison ("Morrison Decl.") ¶ 2; Morrison Depo. at 11:7-8; Simmons Decl. Ex. 2, Ex. 6 at USA 00665-69, 675-80.) Morrison currently is serving as Warden of Federal Prison Camp Duluth, Minnesota ("FPC Duluth").

In early 2004, Morrison was relieved of his duties in the Senior Deputy position and reassigned to a position as Special Assistant to the Regional Director until approximately May or June 2004. (*See* Morrison Decl. ¶ 5; Morrison Depo. at 49:13-21, 65:1-10.) Although the timing is not clear, Morrison claims, and it appears to be undisputed, that Joseph Gunja, who was appointed Western Regional Director in approximately March 2004, was involved in this decision. (Morrison Decl. ¶ 5 and Morrison Depo. at 51:2-52:14, 56:11-22; Gunja Depo. at 120:9-21, 161:6-20, 173:13-23.) Defendant asserts that Morrison was reassigned because he was the subject of internal investigations. (Gunja Depo. at 161:16-20, 173:13-23; *see also* Declaration of John Dignam ("Dignam Decl.") ¶¶ 10-12.)[3] Two of these investigations were opened before Gunja was appointed to the Western Regional Office, and one was opened shortly after his appointment. (Deposition of Joseph Gunja ("Gunja Depo.") at 120:9-21; Dignam Decl. ¶¶ 10-12).[4]

Morrison does not dispute that he was the subject of these internal investigations. However, Morrison avers that "[b]ased upon information I had learned from various sources that many non-African Americans had much more severe allegations made against them, but were not relieved of duty pending investigation, I formed the belief that I was being discriminated against based on my race." (Morrison Decl. ¶ 6.) Morrison claims that, in May 2004, he complained to Gunja about his belief that Gunja discriminated against him on the basis of his race. (Morrison Decl. ¶ 7; Morrison Depo. at 52:17-53:12, 56:15-22, 85:13-86:7, 93:10-17.) Morrison also contends that, shortly after this meeting, he wrote Gunja a letter in which he complained of discrimination. (Morrison Depo. at 91:3-7.) Gunja denies that Morrison

---

[3] The Court has ruled that the decision to remove Morrison from the Senior Deputy is not actionable. *See* Docket Nos. 18, 39.

[4] Excerpts of Gunja's deposition are attached as Exhibit 3 to the Simmons Declaration, and a full transcript is attached as Exhibit 1 to the Declaration of Robert M. Ball in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment.

2

complained to him verbally but thinks that, at some point, he may have seen a letter from Morrison in which Morrison complained of discrimination. (Gunja Depo. at 117:20-119:3, 128:24-129:11.)[5] The Director of the Bureau of Prisons, Harley Lappin ("Lappin"), also testified that he knew Morrison had complained to Gunja about racial discrimination but did not recall when he learned of that fact. Lappin also recalled a "memo" that Morrison sent and thought he received the memorandum sometime before August 2004. (Deposition of Harley Lappin ("Lappin Depo.") at 37:23-39:24.)[6]

Morrison claims that shortly after he complained to Gunja, Gunja complained to Lappin about Morrison's performance. Gunja testified that he discussed his concerns about Morrison's performance with Lappin at some time between June and August 2004 (hereinafter the "oral performance evaluation"). (Gunja Depo. at 108:15-109:19, 182:11-184:20.) Lappin testified that Gunja approached him with some concerns about Morrison's performance at some time between May and August 2004 and that Gunja suggested Morrison be reassigned. (Lappin Depo. at 20:5-21:5, 31:3-33:1, 35:24-38:12, 78:5-21, 79:5-80:2.)

In August 2004, Lappin and others attended an executive staff meeting at they discussed vacant positions within the BOP, including the warden position at United States Penitentiary McCreary, Kentucky ("USP McCreary"), and potential candidates for those positions. Morrison claims that learned of the vacancy at USP McCreary before this meeting, and told Gunja he wanted to be considered for the position. Morrison claims that Gunja said, "I'll see." (Morrison Decl. ¶ 9; Morrison Depo. at 67:10-23.) Gunja denies that Morrison expressed this preference to him. (Gunja Depo. at 129:12-19.)

It is undisputed that Morrison did not get the position at USP McCreary, and there is evidence in the record to suggest that Gunja did not proffer Morrison's name as a candidate.

---

[5] Morrison submits a letter dated May 7, 2004, in which he complains to Gunja about racial discrimination. (Ball Decl., Ex. 4.) Defendant filed a motion *in limine* and asks that the Court not consider the letter because it was belatedly produced. The Court expresses no opinion on Defendant's objections to the letter for purposes of this motion, because the Court did not consider it.

[6] Excerpts of the Lappin Deposition are attached as Exhibit 4 to the Simmons Declaration, and the full transcript is attached as Exhibit 2 to the Ball Declaration.

3

(*See* Declaration of Kim White ¶ 17.) Instead, Donald Stine, a white male then acting as Warden of FPC Duluth, was assigned to USP McCreary. (*Id.* at ¶ 15.) It is further undisputed that Lappin assigned Morrison to be the Warden at FPC Duluth base, in part, on Gunja's oral performance evaluation. (*See, e.g.* Simmons Decl., Ex. 2; Deposition of Harley Lappin ("Lappin Depo.") at 35:24-36:18, 77:21-24, 78:5-80:12; Gunja Depo. at 181:4-23.)

Lappin testified that his decision to assign Morrison to FPC Duluth was based on the assessment that Morrison was not yet ready to assume a wardenship at a higher security institution. (*See, e.g.,* Lappin Depo. at 80:4-12.) Morrison did not want the new position and advised Gunja of that fact. (Morrison Depo. at 107:11-25, 158:21-159:5.)

On August 23, 2004, Morrison contacted an EEO counselor. On or about October 26, 2004, Morrison filed an EEO complaint claiming race discrimination and reprisal discrimination. (Simmons Decl. Exs. 18-19.)

The Court shall address additional facts as necessary in its analysis.

## ANALYSIS

### A.     Legal Standards Applicable to Motions for Summary Judgment.

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v.*

4

1  *Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  A fact is "material" if it may affect the
2  outcome of the case. *Id.* at 248.  If the party moving for summary judgment does not have the
3  ultimate burden of persuasion at trial, that party must produce evidence which either negates an
4  essential element of the non-moving party's claims or that party must show that the non-moving
5  party does not have enough evidence of an essential element to carry its ultimate burden of
6  persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir.
7  2000).  Once the moving party meets his or her initial burden, the non-moving party must go
8  beyond the pleadings and, by its own evidence, "set forth specific facts showing that there is a
9  genuine issue for trial." Fed. R. Civ. P. 56(e).

10  In order to make this showing, the non-moving party must "identify with reasonable
11  particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275,
12  1279 (9th Cir. 1996).  In addition, the party seeking to establish a genuine issue of material fact
13  must take care to adequately point a court to the evidence precluding summary judgment
14  because a court is "'not required to comb the record to find some reason to deny a motion for
15  summary judgment.'" *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th
16  Cir. 2001) (quoting *Forsberg v. Pacific Northwest Bell Telephone Co.*, 840 F.2d 1409, 1418 (9th
17  Cir. 1988)).  If the non-moving party fails to point to evidence precluding summary judgment,
18  the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

19  **B.      Defendant Is Entitled to Summary Judgment on the Race Discrimination Claim.**

20  Morrison argues that the decision to assign him to FPC Duluth was racially motivated.
21  Pursuant to Title VII, it is unlawful for an employer "to discriminate against any individual with
22  respect to his compensation, terms, conditions, or privileges of employment because of such
23  individual's race..." 42 U.S.C. § 2000e-1(a)(1).  In general, claims of discrimination are
24  evaluated under the framework set forth by the United States Supreme Court in *McDonnell*
25  *Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under that framework, "the burden of
26  production first falls on the plaintiff to make a *prima facie* case of discrimination." *Coghlan v.*
27  *American Seafoods Co.*, 413 F.3d 1090, 1094 (9th Cir. 2005).
28

1    If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to
2 present evidence "sufficient to permit the factfinder to conclude that the employer had a
3 legitimate nondiscriminatory reason for the adverse employment action." *Id.* (citing *St Mary's*
4 *Honor Center v. Hicks*, 509 U.S. 502, 506-07 (1993)).  If the employer meets its burden, "the
5 *McDonnell Douglas* framework drops out of the picture entirely, and the plaintiff bears the full
6 burden of persuading the factfinder that the employer intentionally discriminated against him."
7 *Id.*  That is, the plaintiff bears the burden of showing that the employer's reason for the adverse
8 employment action was pretextual.  *Vasquez*, 349 F.3d at 640.

9    As set forth above, Defendant asserts that the decision to assign Morrison to FPC Duluth
10 was based on the belief that Morrison was not ready to become a Warden at a higher security
11 institution.  Even assuming that Morrison satisfies the minimal burden necessary to establish a
12 *prima facie* case of discrimination, the Court concludes that Defendant is entitled to summary
13 judgment because Morrison has not met his burden to show that Defendant's reasons for
14 assigning him to FPC Duluth were a pretext for race.  A plaintiff may "show pretext directly, by
15 showing that discrimination more likely motivated the employer, or indirectly, by showing that
16 the employer's explanation is unworthy of credence." *Id.* at 641; *see also Coghlan*, 413 F.3d at
17 1094-95.  Morrison concedes that he does not have direct evidence of racial discrimination.[7]
18 Rather, Morrison relies on circumstantial evidence to show pretext.  Therefore, to defeat
19 Defendant's motion, Morrison must present "specific and substantial" evidence that
20 Defendant's decision regarding his assignment is a pretext for race.  *See Wallis v. J.R. Simplot*,
21 26 F.3d 885, 890 (9th Cir. 1994).

22    In *Wallis*, the Ninth Circuit noted that although a plaintiff can establish a *prima facie*
23 case of discrimination with minimal evidence, once the *McDonnell Douglas* presumption falls
24 away, plaintiff must do more.  *Wallis*, 26 F.3d at 892; *see also Wilborn v. Ashcroft*, 222 F.
25 Supp. 2d 1192, 1197 (S.D. Cal. 2002) (granting summary judgment because plaintiff did no
26 more than rely on *prima facie* case and deny credibility of the defendant's witnesses).  In

---

[7] For example, Morrison admits that he never heard Gunja use a racial epithet. (Morrison Depo. at 53:1-3.)

6

*Wallis*, the plaintiff attempted to rebut defendant's legitimate reasons for terminating him by relying on "the same proof he offered to establish his *prima facie* case" of age discrimination and retaliation. *Wallis*, 26 F.3d at 892. Because the plaintiff offered "no additional proof of age discrimination either direct, circumstantial or statistical," the court concluded the district court correctly granted summary judgment in favor of the defendant. *Id*; *see also McDonnell Douglas*, 411 U.S. at 804-05 (noting that evidence relevant to a showing of pretext may consist of similarly situated employees outside the protected class being treated differently or evidence of defendant's policy and practices with respect to minority employment, such as statistics showing a general pattern of discrimination).

      Morrison's case suffers from similar flaws as that of the plaintiff's case in *Wallis*. In his Complaint, Morrison alleged that after Gunja assumed the duties of Western Regional Director, Morrison "became aware of what appeared to be a pattern of racially disparate treatment against African American employees." (SAC ¶ 8.) In the narrative statement that was submitted in support of his EEO complaint, Morrison also alleges that Gunja filled vacancies within the Western Region with Caucasians rather than with African-Americans. (*See* Simmons Decl. Ex. 19.) Although a showing that non African-American employees were treated more favorably could be probative of pretext, *see Vasquez*, 349 F.3d at 641, there is no competent evidence in the record from which the Court could draw that inference. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (party opposing summary judgment cannot rest on "metaphysical doubt" as to the material facts); *Carmen*, 237 F.3d at 1028 ("To be cognizable on summary judgment, evidence must be competent."). Moreover, even if the Court could rely on the allegations in Morrison's EEO complaint, those allegations do not establish that those employees who were treated more favorably were similarly situated to Morrison. *See Vasquez*, 349 F.3d at 641 ("individuals are similarly situated when they have similar jobs and display similar conduct").

      Finally, in his declaration Morrison states that he was aware of other non-African Americans who were treated differently than he was and that this fact formed the basis of his belief that Gunja actions were racially motivated. Morrison's declaration merely sets forth

7

1  Morrison's personal belief that Gunja acted with a racial motive.  Morrison did not repeat under
2  oath any of the specific allegations that he made in the Amended Complaint or in his EEO
3  complaint.  Further, the excerpts of Morrison's deposition before the Court do not provide any
4  additional support for his belief.  (*See* Morrison Decl. ¶¶ 7-8; Morrison Depo. at 52:17-53:12,
5  56:15-22, 85:13-86:7, 93:10-17.)  "A plaintiff's belief that a defendant acted from unlawful
6  motive, without evidence supporting that belief, is no more than speculation or unfounded
7  accusation about whether the defendant really did act from an unlawful motive."  *Carmen*, 237
8  F.3d at 1028; *see also Bradley v. Harcourt, Brace & Company*, 104 F.3d 267, 270 (9th Cir.
9  1996) (affirming summary judgment on sexual discrimination claim where plaintiff produced
10 no "specific, substantial evidence of pretext" to rebut defendant's explanations for termination
11 and relied primarily on her subject beliefs as to her competence).

12 Morrison also relies on his written performance evaluations and argues that these
13 positive evaluations demonstrate that the concerns raised by Lappin and Gunja about his
14 abilities are unworthy of credence and that, therefore, his superiors at the BOP must have
15 denied him the position at USP McCreary and assigned him to FPC Duluth because of his race.
16 Morrison had previous experience as a Warden at FCI Elkton.  The record shows that during his
17 tenure as Warden at FCI Elkton, Morrison received an overall "Exceeds" rating and was
18 evaluated as "Outstanding" with respect to the "Directs Operations or Programs" and
19 "Communicates" elements of that position.  (*See* Simmons Decl. Ex. 6 at USA00675-80.)

20 Morrison has not presented any statistics or other competent evidence of Defendant's
21 employment related decisions, *e.g.,* promotions.  Nor is there competent evidence that similarly
22 situated non African-American employees were treated more favorably.  Thus, even if one
23 accepts as true the facts that Gunja gave Morrison a negative oral performance evaluation and
24 that Lappin relied on that evaluation to decide it was appropriate to assign Morrison to FPC
25 Duluth, and even when one considers Morrison's positive written performance evaluations
26 against Defendant's proffered reasons for assigning him to FPC Duluth, there is insufficient
27 evidence in the record from which the Court could infer that the decisions to deny Morrison the
28 position at USP McCreary and assign him to FPC Duluth was racially motivated.  from which

8

the Court could find that a reasonable jury could infer that Gunja's actions were motivated by discriminatory intent and, thus, that Defendant's reasons for assigning Morrison to FPC Duluth are pretextual. *See McDonnell Douglas*, 411 U.S. at 804-05; *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1437 (9th Cir. 1990 (finding that stray remark without more was insufficient to show defendant's proffered reason was a prextext for age); *DeHorney v. Bank of America Nat'l Trust and Sav. Ass'n*, 879 F.2d 459, 468 (9th Cir. 1989) (affirming grant of summary judgment on Section 1981 discrimination claim because plaintiff could not establish nexus between alleged discriminatory remark and termination).

There may well be evidence in existence that could support Morrison's belief that he was discriminated against on the basis of race. However, it has not been presented to the Court. Accordingly, Defendant is entitled to summary judgment on the discrimination claim.

**C.     Defendant Is Not Entitled to Judgment on the Retaliation Claim.**

Title VII prohibits an employer from "discriminat[ing] against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Morrison argues that he was denied the position at USP McCreary and demoted to FPC Duluth in retaliation for complaining to Gunja about incidents of racial discrimination. Morrison also argues that Gunja also retaliated against him by giving him a negative assessment of his performance to Lappin.

Morrison's retaliation claim is evaluated under the *McDonnell Douglas* framework. *See McGinest v. GTE Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004). Thus, Morrison first must make out a *prima facie* case of retaliation. *Vasquez*, 349 F.3d at 646. If he satisfies his burden, the burden shifts to Defendant to articulate a non-retaliatory reason for the adverse employment action. If Defendant meets its burden, the framework drops away, and Morrison must show that Defendant's reasons are pretextual. *See McGinest*, 360 F.3d at 1124; *Vasquez*, 349 F.3d at 644-46.

//

9

1  //

2  //

### 1. Morrison Has Presented Sufficient Evidence to Establish Genuine Issues of Material Fact on a *Prima Facie* Case of Retaliation.

Morrison can establish a *prima facie* case of retaliation by showing that: (1) he engaged in protected activity under Title VII; (2) he suffered an adverse employment action; and (3) that there is a causal nexus between the two events. *McGinest*, 360 F.3d at 1124.

#### a. Morrison has established that there are genuine issues of fact in dispute with respect to whether he engaged in protected activity.

Defendant argues that there is no evidence that Morrison engaged in protected activity before he was assigned to FPC Duluth in August 2004. However, Morrison submits a declaration in which he states that, in approximately May 2004, he verbally complained to Gunja about the fact that he believed Gunja was discriminating against him. (Morrison Decl. ¶ 7; Morrison Depo. at 52:17-53:12, 56:15-22, 85:13-86:7, 93:10-17.) Morrison's declaration is consistent with his responses to Defendant's interrogatories, in which he states that in April, May and June 2004, he verbally complained to Gunja about discrimination. (Simmons Decl., Ex. 20.)

Verbal complaints of discrimination qualify as "protected activity." *See e.g. Fields v. Riverside Cement* Co., 2007 WL 900983 at *3 (9th Cir. Mar. 27, 2007) (concluding plaintiff had established *prima facie* case of retaliation based in part on complaints to supervisors of discrimination); *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1068 (9th Cir. 2003) (verbal complaints of discrimination to company officials found to be protected activity for purposes of prima face case).[8] Thus, Morrison has presented sufficient evidence to show there are genuine issues of fact in dispute regarding whether he engaged in protected activity.

#### b. Morrison has met his burden to show genuine issues of fact exist as to whether he suffered an adverse employment action.

The Supreme Court recently held that the anti-retaliation provisions of Title VII cover "employer actions that would have been materially adverse to a reasonable employee or job

---

[8] Because verbal complaints are sufficient, the Court has not considered the May 7, 2004 letter submitted as Exhibit 4 to the Ball Declaration.

11

1 applicant," *i.e.* "the employer's actions must be harmful to the point that they could well
2 dissuade a reasonable worker from making or supporting a charge of discrimination."
3 *Burlington Northern & Santa Fe Railway Co. v. White*, __ U.S. __, 126 S.Ct. 2405, 2409
4 (2006). "[W]hether an action is "materially adverse depends upon the circumstances of the
5 particular case, and 'should be judged from the perspective of a reasonable person in the
6 plaintiff's position, considering all the circumstances.'" *Id.* at 2417 (quoting *Oncale v.*
7 *Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81 (1998)) (additional internal quotations
8 omitted).

9 Morrison argues that Gunja's negative assessment of Morrison's performance was an
10 adverse employment action because it was undeserved. *See Yartzoff v. Thomas*, 809 F.2d 1371,
11 1376 (9th Cir. 1987) ("Transfers of job duties and undeserved performance ratings, if proven,
12 would constitute 'adverse employment decisions[.]'"). Morrison also contends the assignment
13 to FPC Duluth was a demotion, which can qualify as an adverse employment action. *See*
14 *Fields*, 2007 WL 900983 at 3 (suspensions, demotions and termination constituted adverse
15 employment actions). Defendant counters that because the position as a Warden carried more
16 responsibility than the Senior Deputy position and because Morrison's pay grade did not change
17 the assignment was not a demotion.[9]

18 "The requisite degree of proof necessary to establish a *prima facie* case for Title VII ...
19 claims on summary judgment is minimal and does not even need to rise to the level of a
20 preponderance of the evidence." *Coghlan*, 413 F.3d at 1094 (quoting *Wallis*, 26 F.3d at 889).
21 In moving for summary judgment, Defendant submitted the evaluation Morrison received while

---

[9] Morrison asserts that the decision not to assign him to USP McCreary, the decision to assign him to FPC Duluth, and the failure either to reconsider the decision regarding USP McCreary or to allow him to remain in the Senior Deputy position all qualify as adverse employment actions. Taking these actions together as a whole, the crux of Morrison's complaint is that the decision to send him to FPC Duluth was a demotion. The Court thus evaluates the retaliation claim from that perspective. If Defendant maintains at trial that Defendant retaliated against him by failing to promote him to USP McCreary, the Court finds that there are genuine issues of material fact in dispute as to whether he was qualified for the position at USP McCreary, in light of the fact that it does not appear that he was required to formally apply for the job, that he had prior experience as a warden, and that Lappin could not recall who else may have been raised as a possible candidate for the position.

12

1  serving as Warden of FCI Elkton, which shows that he received an "Exceeds" rating.
2  (Simmons Decl. Ex. 6 at 675-680.) The record also contains evidence from which a reasonable
3  jury could infer that a higher security facility carries more responsibility and that even some
4  lateral moves within the BOP can be considered advancements on a career path. *See Yartzoff*,
5  809 F.2d at 1376. (*See, e.g.,* Lappin Depo. 79:5-81:14, 91:24-92:13; Gunja Depo. 148:21-
6  150:10, 151:1-9, 156:16-158:2.)

7  Given Morrison's prior experience at FCI Elkton, and the lack of any suggestion that
8  FCI Elkton was an institution of equivalent security level to FPC Duluth, the Court finds that
9  Morrison has presented sufficient evidence from which a reasonable jury could infer that the
10 assignment at FPC Duluth would have been a step down in Morrison's career path. The Court
11 also concludes that there is sufficient evidence from which a jury could infer that Gunja's
12 negative oral performance evaluation, upon which Lappin relied, was undeserved. Thus, there
13 is sufficient evidence from which a reasonable jury could conclude that Morrison suffered an
14 adverse employment action.

15     **c.  There is sufficient evidence to infer a causal nexus.**

16 Morrison contends that he complained to Gunja about racial discrimination in May
17 2004. He also claims that shortly thereafter Gunja contacted Lappin and raised concerns about
18 his performance and suggested that Morrison be transferred. Although Lappin did not specify
19 exactly when Gunja raised these concerns with him, he did testify that it occurred a few weeks
20 before the August 2004 executive meeting, less than three months after Morrison complained to
21 Gunja. The Ninth Circuit has recognized that the timing of an adverse employment action alone
22 may establish causation when the adverse employment action follows closely in time to the
23 protected activity. *See, e.g., Miller v. Fairchild Indus.*, 885 F.2d 498, 505 (9th Cir. 1989)
24 (sufficient evidence to establish *prima facie* case of causation where adverse actions occurred
25 less than sixty days after EEOC hearing); *Yartzoff*, 809 F.2d at 1376 (finding that evidence was
26 sufficient to establish causation where adverse actions occurred less than three months after
27 employee filed complaint).
28

The Court finds that the temporal proximity of Morrison's complaints to Gunja and the allegedly retaliatory actions is sufficiently close to satisfy Morrison's burden, at this procedural stage, that the requisite causal connection may exist.

### 2.     Defendant Has Articulated Legitimate Non-Retaliatory Reasons for the Actions.

Defendant contends that Lappin based his decision to assign Morrison to FPC Duluth because he was concerned that Morrison was not yet qualified to run a higher security institution. (*See* Lappin Depo. at 90:2-92:13, 94:15-96:6; White Decl. ¶¶ 16-17.) Concerns about an employee's work performance are legitimate non-retaliatory reasons for taking adverse employment actions. *See, e.g., Bradley*, 104 F.3d at 270 (finding inadequate work performance legitimate non-discriminatory reason for termination, and shifting burden back to plaintiff to rebut reason as pretext). Thus, Defendant has proffered sufficient evidence to meet its burden under the *McDonnell Douglas* framework.

### 3.     Morrison Has Presented Sufficient Evidence to Show Pretext.

Morrison argues that the purported concerns about his work performance are pretext for retaliation. To show that Defendant's explanation is unworthy of credence, Morrison again relies on the fact that his written evaluations were all positive. Defendant does not dispute the fact that Gunja never documented his concerns about Morrison's performance. Rather, Gunja testified that he preferred to resolve the issues informally. (*See, e.g.,* Gunja Depo. at 59:8-60:10, 81:11-82:1, 83-7:91:19, 94:21-102:1.)

Notwithstanding Gunja's apparent concerns about Morrison's performance, on October 21, 2004, after the decision to assign Morrison to FPC Duluth was made, Gunja sent a memorandum to Lappin in which he stated that "[t]he attached rating recommendation for ... Morrison at the Western Regional Office is an overall **EXCEEDS**." Morrison received an "E" rating for all elements rated during the period April 1, 2003 through March 31, 2004. (Simmons Decl. Ex. 6 at USA 00659-60 (emphasis in original).) Gunja also wrote "Roy did a great job this past year as dsrd [*sic*]. Thank you." (*Id.*) Lappin also signed off on this evaluation and stated "Thanks Roy for a job well done." (*Id.*) Although this positive evaluation

14

could undercut Morrison's assertion that Defendant retaliated against him, because it was submitted after the assignment to FPC Duluth and after he filed his EEO Complaint, it also undermines Gunja's and Lappin's stated concerns about his performance.

Furthermore, Lappin did testify that he was aware that Morrison had complained to Gunja about racial discrimination and also testified that he relied on recommendations from his staff when he makes employment assignments. The record establishes that Lappin did not recall any significant problems with Morrison's performance prior to Gunja's arrival. (Lappin Depo. at 19:25-20:4.) Lappin also could not recall whether Gunja raised the issues with him that Gunja testified formed the basis of his concerns with Morrison's performance. (*Id.* at 34:3-15.) Finally, Morrison attests in his declaration that he received a number of performance awards. (Morrison Decl. ¶ 3.) Defendant proffers no evidence to contradict Morrison's accomplishments.

The Court concludes that when one considers this evidence, in connection with his *prima facie* case, Morrison has presented sufficient evidence to create a genuine issue of material fact as to whether the proffered reasons to assign him to FPC Duluth were a pretext for retaliation. Defendant's motion is therefore DENIED as to the retaliation claim.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED IN PART AND DENIED IN PART.

**IT IS SO ORDERED.**

Dated: May 9, 2007

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE